IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY ALLEN PARKER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1222 |
| | ) | |
| | ) | Judge David Stewart Cercone/ |
| | ) | Magistrate Judge Maureen P. Kelly |
| CAROLYN W. COLVIN, *Acting* | ) | |
| *Commissioner of Social Security,* | ) | Re: ECF Nos. 12 and 14 |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [ECF No. 12] be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant [ECF No. 14] be granted and that the decision of the Commissioner denying Plaintiff's application for supplemental security income benefits be affirmed.

II. **REPORT**

   A. **Procedural History**

Plaintiff Timothy Parker brought this action pursuant to 42 U.S.C. § 1383(c), seeking review of the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.

Plaintiff protectively filed for SSI benefits on July 2, 2007, alleging an onset of disability of January 18, 2007, due to diabetes, muscle wasting in his legs, (atrophy), a right torn rotator

1

cuff, and cancer.[1] (Tr. 148-158). The claim was denied initially on March 27, 2008, with a finding that Plaintiff was not disabled due to any of the conditions identified by Plaintiff. (Tr. 113-117).

At Plaintiff's request, a hearing before an Administrative Law Judge was held on December 8, 2009. Plaintiff was represented by counsel and testified in support of his claim. In addition, an impartial vocational expert appeared at the hearing. On January 13, 2010, the ALJ issued his decision, indicating that while plaintiff suffered severe impairments including substance abuse disorder, left knee osteoarthritis, cervical and lumbar arthritis, degenerative disc disease, diabetes mellitus, and bipolar disorder, none of his impairments met the criteria for a listed impairment as set forth in 20 CFR Part 404, Subpart P, Appendix 1. In particular, the ALJ determined that the objective medical evidence, as well as the opinion evidence of record, failed to support Plaintiff's allegations of mental or physical disability. (Tr. 84 – 91).

Plaintiff sought review with the Social Security Administration Appeals Council, and on March 31, 2011, the Appeals Council remanded the case for a specific assessment of plaintiff's physical and mental limitations including: (1) whether or not Plaintiff was capable of performing work-related mental activities; (2) whether Plaintiff's prior employment as a fry cook was performed at a substantial gainful activity level to qualify as past relevant work; (3) whether his position as a fry cook was inconsistent with findings of moderate mental limitations; (4) whether Plaintiff's assessed limitations and maximum residual functional capacity were supported by evidence of record; (5) the effect of Plaintiff's assessed limitations on his ability to find appropriate employment in the national economy, resolving any conflicts between the

---

[1] As discerned by the Commissioner, there are no medical records to support Plaintiff's initial claim of cancer, nor does Plaintiff allege cancer as a disability in his current appeal.

occupational evidence provided and the information in the Dictionary of Occupational Titles; and, (6) whether, if disabled, Plaintiff's drug addiction and alcoholism are contributing factors material to the determination of disability. (Tr. 77-79). A hearing was held on September 27, 2011, at which time Plaintiff, who was represented by counsel, and a vocational expert ("VE") were called to testify. (Tr. 15). The ALJ issued a decision on March 8, 2012, finding that Plaintiff is capable of performing the requirements of several light unskilled jobs that exist in the national economy and, thus, is not disabled as defined under the Act. (Tr. 30 ). The Appeals Council denied Plaintiff's request for review on July 18, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 5). Plaintiff filed this civil action seeking judicial review of the ALJ's decision.

### B. Factual Background

In seeking review of the ALJ's decision, Plaintiff challenges only: (1) the vocational expert's testimony regarding employment identified as within Plaintiff's physical and mental capabilities, and (2) whether the ALJ included the physical limitations identified by the consultative examiner in her residual functional capacity assessment as it related to Plaintiff's ability to use and lift his arms. Since the issues addressed are relatively narrow, the Court will only set forth those facts pertinent to the instant motions and will not include a complete recitation of Plaintiff's extensive medical and drug and alcohol treatment history.

#### 1. Relevant Medical Records

The medical records submitted to the Court span thousands of pages. These records are primarily reflective of Plaintiff's treatment for persistent drug and alcohol abuse.

With regard to Plaintiff's complaints of intractable knee pain not improving with physical therapy, Plaintiff underwent an MRI of his left knee on May 14, 2008, which found normal

3

ligaments and muscle, with "trace" joint effusion and "mild chondromalacia." (Tr. 932). There is no further objective evidence of knee impairments, and all subsequent exams either showed good range of motion, muscle strength and no effusion.

As to Plaintiff's complaint of shoulder pain, Plaintiff relates a history of shoulder pain stemming from a 1999 car accident. Plaintiff received chiropractic treatment for the years 2006 through 2009 for left shoulder pain, which significantly helped and resulted in normal results for strength upon testing. (Tr. 1187, 3345). In the year leading up to the hearing of this matter, Plaintiff was seen by his primary care physician, Hugh Shearer, D.O., at Butler Medical Associates for recurring pain in both his right and left shoulder. (Tr. 4630-4634). Beginning in 2010, Plaintiff's initial complaints related to his left shoulder rotator cuff injury, for which Plaintiff was referred to a specialist, and treated with Vicodin for pain. (Tr. 4630). However, over the course of the following year, Plaintiff had a "left shoulder procedure" "at Bethesda," "and had injection of stem cells. [He] reports that the left shoulder is doing very well with that." (Tr. 4630).

Soon after his left shoulder pain resolved, on May 25, 2011, Plaintiff sustained a fall and injured his right shoulder. (Tr. 4731). Plaintiff was transported by ambulance to the Butler Memorial Hospital Emergency Room, where x-rays revealed mild degenerative disease of the right shoulder joint and no evidence of fracture or dislocation. Plaintiff was provided ice and a splint, with a sling. He was prescribed a short course of hydrocodone (4 pills) and Motrin for pain. (Tr. 4732 – 4733). Plaintiff was also instructed to follow up with his primary care physician. Id.

Two days later, Plaintiff was seen by Dr. Shearer, (Tr. 4630), who examined Plaintiff and found a decreased range of motion resulting from pain. Dr. Shearer prescribed ice and

4

hydrocodone for pain. (Tr. 4631). Dr. Shearer also ordered an MRI, which revealed a SLAP[2] lesion with swelling of the suraspinatus tendon, but otherwise a normal shoulder with mild joint arthrosis and no ligament, bursa or muscle injury. (Tr. 4635 – 4636). Plaintiff returned to Dr. Shearer on June 24, 2011, and obtained a second prescription for Vicodin and instructions for home exercise with directions related to the importance of performing range of motion exercises to prevent "frozen shoulder." Plaintiff was told to return in four weeks if he was "still having problems." (Tr. 4629). There are no records indicating that Plaintiff ever returned to Dr. Shearer or to any other medical provider for further treatment or issues related to either his left or right shoulder. Plaintiff's testimony during the hearing of this matter reflects some continued problems with his left shoulder and hand, making it difficult on some days to pick up or hold more than a cup of coffee; however, there are days when he "could pick up a bag of clothes or something." (Tr. 4820). Plaintiff also testified to difficulties with his right arm and hand, which are "stiff" but do not interfere with his ability to pick up a bag of laundry or "carry a bag of groceries (estimated by Plaintiff at 25 pounds) a block across the street." (Tr. 4821).

### 2. Consultative Physical Examination

Five months later, on November 7, 2011, at the state agency's request, Ellen Mustovic,

---

[2] "The term SLAP stands for Superior Labrum Anterior and Posterior. In a SLAP injury, the top (superior) part of the labrum is injured. This top area is also where the biceps tendon attaches to the labrum. A SLAP tear occurs both in front (anterior) and back (posterior) of this attachment point."

Ortho Info, American Academy of Othropaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00627.

In many cases, the initial treatment for a SLAP injury is nonsurgical. Treatment options may include non-steroidal anti-inflammatory medication and physical therapy with flexibility and range-of-motion exercises to strengthen the shoulder muscles to relieve pain and prevent further injury. Id.

M.D., performed a consultative physical examination. (Tr. 4770 – 80). Plaintiff reported that he had undergone multiple injections and physical therapy for his shoulder pain without success. (Tr. 4771). In addition, Plaintiff complained of chronic neck pain that radiates down the left arm, causing weakness and cramping in his arm and hand. Plaintiff stated he suffers low back pain, numbness in his hands and feet related to diabetic neuropathy, and left knee pain unaided by physical therapy or injections.

Dr. Mustovic noted that Plaintiff's gait was normal and that he carried a cane in his right hand. (Tr. 4772). She further noted that Plaintiff's gait remained unchanged whether he used the cane or not. (Tr. 4772). Dr. Mustovic found that Plaintiff had normal reflexes in his upper and lower extremities and had normal muscle strength rated at 5/5 (with the exception of his left quadriceps, which had "give away weakness" when Plaintiff complained of pain). (Tr. 4773). While Plaintiff had somewhat reduced range of motion in his shoulders and neck, he had full range of motion in his lumbar spine. (Tr. 4778-79). Furthermore, while Plaintiff complained of pain radiating down his arm, Dr. Mustovic found no evidence of cervical radiculopathy during her examination. (Tr. 4773). Similarly, Dr. Mustovic's exam found no clear evidence of radiculopathy affecting his left leg or causing the low back pain as reported by Plaintiff.

Based on her findings, Dr. Mustovic opined that Plaintiff had "some limitations" in his physical capabilities due to his rotator cuff tear. (Tr. 4773). She further opined that Plaintiff could: lift 20 pounds occasionally and 5 pounds frequently; stand/walk for 4 hours in an 8-hour day for 30 minutes at a time; sit for 6 hours in an 8-hour day for 2 hours at a time; never climb, kneel, crouch, balance, or crawl; and only occasionally stoop. (Tr. 4777 – 78). Dr. Mustovic also noted that Plaintiff's ability to feel, handle, reach and push/pull were affected by his physical impairments. (Tr. 4779). However, Dr. Mustovic did not elaborate on the manner or degree to

6

which Plaintiff's impairments affected these physical functions nor did she cite medical evidence supporting her conclusion that Plaintiff was impaired. (Tr. 4779).

### 3. Vocational Expert Testimony/Interrogatories

At the administrative hearing, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience, who was limited to light work; could not perform work requiring rapid-pace production; required simple tasks, simple instructions, and simple decisions "commensurate with SVP levels of 1 or 2"; and could have only occasional contact with the public. (Tr. 4876-77). The vocational expert testified that such an individual could perform several jobs in the national economy. (Tr. 4877). Plaintiff's attorney did not ask any questions on cross-examination. (Tr. 4878 - 4879).

After the hearing, the ALJ ordered the consultative examination with Dr. Mustovic and forwarded a series of interrogatories to the VE to account for Plaintiff's physical limitations, in combination with his mental limitations. (Tr. 4879, 4782). Plaintiff's counsel also submitted additional interrogatories. (Tr. 4788). The ALJ asked the VE to consider additional limitations to a hypothetical individual and whether work would be available in the national economy:

> Assume a hypothetical individual who was born on July 26, 1957, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as a carpenter. Assume further that this individual has the residual functional capacity (RFC) to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The individual can lift and carry 20 pounds occasionally and five pounds frequently; stand and walk four hours during an eight-hour day and for 30 minutes at a time; sit for six hours during an eight hour day and for two hours at a time; occasionally stoop; never climb, kneel, balance, crouch, or crawl; *frequently feel, handle, push, and pull; never reach overhead*; and never work at unprotected heights. Mentally, the individual is limited to occasional public contact, cannot work in a rapid-paced production environment, and is restricted to simple tasks, instructions, and decisions.

(Tr. 4782 -83 (italics added)). The VE noted that such an individual could not perform any of

7

Plaintiff's past jobs, but could find employment as an office helper, information clerk, and packing line worker. (Tr. 4788). The VE noted that the only conflict between the Dictionary of Occupational Titles ("DOT") and the occupational information he provided in the interrogatories related to the sit/stand option. He explained that although the DOT does not reflect whether these positions have an option to sit or stand, in his experience, the jobs he identified allow for a sit/stand option. (Tr. 4784).

Plaintiff's counsel followed up with additional interrogatories that were variations on this question, related primarily to whether employment is available in the national economy for an individual who could "*occasionally* feel, handle, push, and pull" or "*never* feel, handle push and pull." (Tr. 4788 – 4789). The VE indicated that such a person who could "occasionally" feel, handle, push and pull, could find work as an office helper, mail clerk or night patrol in significant numbers within the national economy, but that no work would be available for an individual who could "never" feel, handle, push or pull. Id. In addition, Plaintiff's counsel posed several interrogatories related to varying mental disabilities related to the complete inability to remember work procedures, carry out short and simple instructions, vary routine, or pay attention for two hours, or sustain an ordinary routine without "special supervision." (Tr. 4790 – 4796).

**C. The ALJ Decision**

After a thorough and excellent review of the record evidence, the ALJ determined that Plaintiff suffers from severe impairments resulting from substance abuse, bipolar disorder, left knee meniscus tear, bilateral rotator cuff tears, cervical and lumbar degenerative disease, diabetes mellitus, and arthritis. However, none of the impairments meets or equals one of the impairments listed in 20 CF Part 404, Subpart P, Appendix 1. (Tr. 17-18). This finding was based upon the evidence presented, including Plaintiff's extensive medical records, after giving

special consideration to Plaintiff's degenerative disc disease, shoulder conditions, and mental impairments. Further, the ALJ concluded that after consideration of the entire record, Plaintiff is capable of performing light work requiring him to "lift and carry 20 pounds occasionally and five pounds frequently; stand and walk four hours during an eight-hour day and for 30 minutes at a time; sit for six hours during and eight hour day and for two hours at a time; occasionally stoop; never climb, kneel, balance, crouch, or crawl; frequently feel, handle, push, and pull; never reach overhead; and never work at unprotected heights. Mentally, the claimant is limited to occasional public contact; cannot work in a rapid-paced production environment; and is restricted to simple tasks, instructions, and decisions." (Tr. 19 – 20).

With regard to Plaintiff's mental impairments, the ALJ found that the medical evidence establishes that Plaintiff's symptoms have been closely related to his drug and alcohol abuse, but that even with the effects of substance abuse are considered, his mental limitations do not rise to a disabling level of severity. (Tr. 23). In particular, the ALJ cited the consultative examination of Julie Uran, Ph.D. (Tr. 206). During the exam, Plaintiff reported improvement of his symptoms with medication and treatment, and the exam revealed normal mental status exams, with good hygiene, appropriate eye contact, coherent speech, appropriate mood and affect, normal thought processes, adequate learning abilities, and no memory deficits. (Tr. 24). Dr. Uran's findings related to Plaintiff's ability to understand and carry out short simple instructions, with moderate limitation interacting appropriately with the public, but only slight limitations in interacting with co-workers and supervisors. The ALJ found the report well-reasoned and well-supported.

The ALJ also considered a psychiatric review of records to determine Plaintiff's Mental Residual Function Capacity, completed in 2008 by Arlene Rattan, Ph.D. (Tr. 223 – 238).

9

Dr. Rattan determined that while Plaintiff's ability to understand and remember complex or detailed instructions is limited, he would be able to understand and recall simple one and two-step instructions, make simple decisions and maintain socially appropriate behavior. (Tr. 238). Dr. Rattan also concluded that Plaintiff could sustain an ordinary routine without special supervision, and that he is capable of meeting the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments. Id.

The ALJ discounted a 2011 assessment by a nurse practitioner at the Veteran's Administration Medical Center, who rated Plaintiff unable to perform even unskilled work. The nurse practitioner found Plaintiff incapable of carrying out any short instructions, recalling work procedures, asking simple questions, or being aware of normal hazards. (Tr. 4767). Notably, and regardless of Plaintiff's extensive treatment history, the nurse practitioner found that Plaintiff's impairments were unrelated to alcohol or substance abuse, but the result of depression brought on by orthopedic pain. (Tr. 4766 – 4768). Given Plaintiff's extensive mental health records from treating professionals, which found only moderate work-related mental limitations for the years leading up to this assessment, the ALJ assigned little weight to the nurse practitioner's report.

With regard to Plaintiff's physical condition, the ALJ determined that Plaintiff's current numerous physical complaints found limited objective documentation through MRI's, x-rays, or clinical exams. Further, the ALJ recognized that Plaintiff often failed to follow through on treatment recommendations, and for the period he did attend physical therapy for shoulder, back and neck pain, a positive response to pain was noted. After injuring his right shoulder, Plaintiff stated his left shoulder was doing "very well," and there is no documentation that Plaintiff sought any medical treatment for his right shoulder after receiving prescriptions for Vicodin. (Tr. 24-

10

27). The ALJ concluded that "in light of claimant's conservative treatment, only moderate objective findings, and evidence of treatment non-compliance and narcotic seeking behavior, the evidence as a whole confirms that he is not precluded from performing a range of light work within the parameters of the … residual functional capacity assessment."(Tr. 27).

Based on the evidence, the ALJ determined that while Plaintiff could not continue is any of his past relevant work, he was able to perform certain light, unskilled jobs available in the national economy. (Tr. 29-30). Accordingly, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act.

**D.     Standard of Review**

Presently before the Court are the parties' cross-motions for summary judgment. In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility. See 20 C.F.R. §§ 404.1520(a) and 416.920(a).[3] Here, the ALJ determined that Plaintiff was not disabled at the fifth step, finding that notwithstanding his mental and physical impairments, the Commissioner

---

[3]     The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy. Id.

11

had met his burden of proving that, considering Plaintiff's residual functional capacity ("RFC"),[4] age, education, and past work experience, he could perform work that exists in significant numbers in the regional or national economy. 42 U.S.C. § 416.960(c). See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

### E. Discussion

Plaintiff seeks only SSI benefits; however, courts have consistently addressed the issue of a claimant's entitlement to SSI in the same manner as a person seeking social security disability benefits. Sullivan v. Zebley, 439 U.S. 521, 525 n.3 (1990); Morales v. Apfel, 225 F.3d 310 , 315-16 (3d Cir. 2000)(claimant's burden of proving disability is the same for both disability insurance benefits and SSI). To qualify for benefits under the Act, a claimant must show he has a medically determinable impairment of such severity that it prevents him from engaging in any past relevant work or any other substantial gainful activity that exists in the national economy for a statutory twelve-month period. 42 U.S.C. § 1382c(a)(3)(A), (B); 20 C.F.R. § 416.905(a); Fargnoli v. Halter, 247 F.3d at 38-39. This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. § 404, Subpt P, App. 1; or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating the he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy…." Heckler v. Campbell, 461 U.S. 458, 461 (1983).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545–46 (3d Cir. 2003); Jones v.

---

[4] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she remains able to perform substantial gainful activity in jobs available in the national economy. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Newell, 347 F.3d at 546; Jones, 364 F.3d at 503.

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. The ALJ concluded that while Plaintiff did have a number of severe impairments, both mental and physical, he did not have an impairment or combination of impairments that "met or medically equaled" a Listed Impairment during the relevant period. In his findings the ALJ explicitly considered Listings 1.04, Disorders of the Spine (with regard to Plaintiff's degenerative disc disease); 1.02, Major Dysfunction of a Joint (with regard to Plaintiff's shoulder condition); Listing 9.00, Endocrine Disorders (with regard to Plaintiff's diabetes mellitus); and his mental impairments under the applicable listings in Section 12.00, Mental Disorders (with regard to Plaintiff's substance abuse and bipolar disorder).

13

The ALJ found that even with the limitations resulting from the combination of these conditions, as accounted for in the questions posed to the VE by both the ALJ and Plaintiff's counsel, Plaintiff was capable of finding light duty unskilled employment as an office helper, information clerk, or packing line worker and therefore was not disabled. (Tr. 30). Plaintiff challenges this finding in two ways. First, Plaintiff contends that the VE's assessment of the skills required in the available jobs Plaintiff is eligible to perform is inconsistent with the job descriptions found in the Dictionary of Occupational Titles ("DOT") and the evidence in this case regarding Plaintiff's RFC. Second, Plaintiff contends that the hypothetical questions posed to the VE were deficient because Plaintiff's limitations were not accurately reflected. Accordingly, Plaintiff argues that the Commissioner has not carried its burden of proving Plaintiff is capable of employment in any job in the national economy.

### 1. DOT job descriptions

The Commissioner's regulations expressly take administrative notice of the job descriptions found in the DOT. 20 C.F.R. § 416.966(d)(1). Social Security Ruling 00-4p requires an administrative law judge to ask a vocational expert whether his or her testimony conflicts with information contained in the DOT, and to "elicit a reasonable explanation" for any apparent conflict. Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002).

In response to an interrogatory describing an individual with the abilities and limitations included within the ALJ's residual functional capacity assessment, the VE stated that the described individual could work as an office helper, an information clerk, or a packing line worker. (Tr. 4782-4784). When asked whether any conflicts existed between her statements and the formal job descriptions found in the DOT, the VE explained that the DOT did not specifically address accommodations permitting employees to change between sitting and

14

standing positions. (Tr. 4783-4784). She asserted that her testimony (concerning Plaintiff's ability to perform the selected light duty positions) was based on both her personal experience and a published study. (Tr. 4783-4784). Plaintiff contends that VE's testimony conflicted with the DOT's job descriptions in other respects, and that the ALJ erred in relying on that testimony. ECF No. 13 at 2-6.

In his decision, the ALJ concluded that Plaintiff could "never reach overhead." (Tr. 19). The DOT indicates that office helpers and information clerks engage in frequent reaching, and that packing line workers are typically expected to reach on a constant basis. Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 672187 (information clerk), 1991 WL 672232 (office helper), 1991 WL 680354 (packing line worker). The job descriptions do not state that office helpers, information clerks and packing line workers are required to engage in overhead reaching. Id. To the extent that Plaintiff believes that the VE's testimony conflicted with the DOT with respect to the function of reaching, he is mistaken. ECF No. 13 at 5.

The ALJ determined that Plaintiff was "limited to occasional public contact." (Tr. 19 – 20). According to the DOT, office helpers must talk and hear on an occasional basis, while information clerks must talk and hear on a constant basis. 1991 WL 672187, 672232. Plaintiff argues that jobs requiring frequent or constant talking and hearing cannot be performed by an individual who can tolerate only occasional interaction with members of the general public. ECF No. 13 at 3-4. That argument is unavailing. It is certainly possible that someone working in the national economy could be expected to speak and listen to supervisors and co-workers without encountering other people. Plaintiff points to nothing in the record which suggests that he is mute or deaf, or that his talking and hearing abilities are otherwise limited.

Plaintiff was found to be "restricted to simple tasks, instructions, and decisions." (Tr.

15

20). Each of the jobs identified by the VE has a Specific Vocational Preparation ("SVP") level of "2." 1991 WL 672187, 672232, 680354. The position of information clerk has a "reasoning" level of "4." 1991 WL 672187. Plaintiff maintains that an individual who is limited to "unskilled" work cannot be expected to perform duties at that level. ECF No. 13 at 4. Under the Commissioner's regulations, however, "unskilled" work is defined by reference to jobs for which "little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a). A person can usually learn how to do an "unskilled" job in thirty days or less. Id. The regulatory definition is consistent with the DOT's SVP "2" classification. 1991 WL 688702.

For the foregoing reasons, Plaintiff does not identify any clear conflicts between the information found in the DOT and the VE's testimony. In any event, it is worth noting that the existence of an "unexplained conflict" does not justify a remand in every conceivable situation. Jones v. Barnhart, 364 F.3d at 506, n.6. Formal job descriptions do not always mirror the duties that employees are expected to perform and the conditions in which they are required to work. Garcetti v. Ceballos, 547 U.S. 410, 424-425 (2006). The primary function of vocational expert testimony is to supplement boilerplate job descriptions with practical information about what employers in the national economy actually expect of their employees on a day-to-day basis. 20 C.F.R. § 416.966(e). The VE was qualified to give testimony based on her education, training and experience. Conn v. Astrue, 852 F. Supp.2d 517, 528-529 (D. Del. 2012). Plaintiff stipulated to VE's qualifications at the hearing. (Tr. 4874). The documentary record confirms that, when asked to provide specific numerical information about the jobs in the national economy that were consistent with Plaintiff's residual functional capacity and vocational profile, the VE adjusted the applicable numbers to account for Plaintiff's functional limitations. (Tr. 4784). Since the VE's testimony was given in response to a hypothetical question describing all

16

of Plaintiff's work-related restrictions, it constituted "substantial evidence" that jobs consistent with his abilities and limitations existed in the national economy. Johnson v. Commissioner of Social Security, 529 F.3d 198, 206 (3d Cir. 2008).

### 2. Totality of ALJ's Hypothetical Question

Plaintiff contends that the ALJ's RFC assessment and the hypothetical questions posed to the VE were incomplete because he did not fully accommodate the shoulder limitations reflected in Dr. Mustovic's report. According to Plaintiff, Dr. Mustovic opined that Plaintiff could *"never"* feel, handle, push, and pull. ECF No. 13, p. 7. Plaintiff apparently concludes that a finding of *some* impairment during the consultative exam in those functions equates to a finding that he is utterly incapable of "feeling, handling, pushing, and pulling."

The Court has thoroughly reviewed the record in this case and finds no merit in Plaintiff's argument. The ALJ reviewed the medical evidence and accurately determined that no treating or examining physician has indicated that Plaintiff suffered from an impairment that would preclude him from engaging in the stated limited range of work for the requisite statutory 12 month period. The social security regulations specify that an impairment must be established by "medical evidence, consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements. 20 C.F.R. § 404.1508 (2007). In framing a hypothetical and vocational assessment, the ALJ must "'accurately' convey only 'credibly established limitations' which 'are medically supported and otherwise uncontroverted in the record.'" Davis v. Colvin, No. 13-CV-00892, 2014 WL 3891643 (W.D. Pa. Aug. 7, 2014) ( quoting Arlow v. Colvin, 2014 WL 1317606, at *5 (W.D. Pa. Mar.28, 2014) and Rutherford, 399 F.3d at 554 (3d Cir. 2005)). It is clear from the record in this case that the ALJ's question accurately included only those limitations supported by Plaintiff's treatment history, and by Dr. Mustovic's opinion.

First, there is no treating medical evidence that Plaintiff can *never* feel, handle, push, or pull and Plaintiff fails to point to any medical test result, examination or opinion by a treating physician reflecting the limitations he cites. Second, Plaintiff relies entirely on Dr. Mustovic's consultative examination and report for the proposition that Plaintiff can *never* reach; however, her report does not support Plaintiff's argument.

As late as June 24, 2011, Dr. Shearer, Plaintiff's treating physician noted no preclusion to reaching (or, indeed, any limitations) on Plaintiff's left side, or any preclusion to reaching on his right side following Plaintiff's injury to his right shoulder. Plaintiff's treatment for the right shoulder injury ceased after he received a second prescription for Vicodin, with instructions to follow up after four weeks if any problems with abduction or pain persisted. (Tr. 4629). There is no evidence Plaintiff returned for treatment. Moreover, Plaintiff has testified regarding his ability to pick up and carry laundry and groceries for at least a city block. (Tr. 4820 – 21).

As reflected in Dr. Mustovic's report, she found that with the exception of some weakness in Plaintiff's left quadriceps, his upper and lower extremity muscle strength was normal at 5/5, and his reflexes were normal but rated a 2/4 in his upper and lower extremities (T. 4773). In addition, Plaintiff had full range of motion in his lumbar spine, and no evidence of cervical radiculopathy, (Tr. 4773, 4776). Dr. Mustovic observed that Plaintiff was unable to squat due to self-reported knee pain, but was able to dress and undress independently for the exam, and climb up on the examination table. Further he had full use of his wrists and elbows, and could reach forward to 60 and 90 degrees on the left and right side, respectively, and perform abduction flexion (reaching away from the body) to 75 and 90 degrees on the left and right side, respectively. (Tr. 4775). Plaintiff's exam did reflect nearly complete adduction limitations (reaching toward the body) on the right side, but only moderate limitations on the left

18

side. Id. These limitations were not supported by any objective testing and, like Plaintiff's assessment of his ability to pick up and carry groceries and laundry or squat at the knee, relied entirely upon self-reporting. As such, the medical evidence of record simply does not support Plaintiff's assertion that he is totally precluded from being able to feel, handle, push or pull, or to perform a limited range of sedentary work based on his physical conditions.

The Court's review of the record reveals that the ALJ accurately took into account all of Plaintiff's physical (and mental) limitations in the arriving at a residual functional capacity assessment and appropriately developed the record in support of his finding, which is supported by the substantial evidence.

### F. Conclusion

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996). In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence. For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly  
MAUREEN P. KELLY  
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2014

cc: All counsel of record via CM-ECF